Barnes v. Fischer, Barnes v. Rock. Good afternoon. Is it Attorney Isman? Did I pronounce that correctly? Yes, Your Honor. Thank you, sir. You have reserved two minutes for rebuttal. Good afternoon, Your Honors, and may it please the Court. Scott Isman for Appellant Jesse Barnes. Three fundamental flaws affected Mr. Barnes' trial. First, the District Court improperly granted judgment as a matter of law to three defendants on Mr. Barnes' First Amendment retaliation plans. Second, the District Court required Mr. Barnes to wear leg shackles throughout trial despite making no factual findings that shackles were necessary. And third, the District Court failed to give an adverse inference instruction about key pieces of missing evidence. Turning first to the First Amendment retaliation claims, the District Court erred in granting judgment as a matter of law to Getman, Clark, and Ramsdell. And I'd like to start with Getman. The only dispute as to Getman is on causation, that is, whether Mr. Barnes' First Amendment-protected activity of filing grievances motivated Getman to attack Mr. Barnes. And there was ample evidence that it did. Well, let me ask you, what evidence, what grievance did your client rely on as the basis for the retaliation claim for the, and with Mr. Getman, we're talking about the August 23rd incident, correct? That's, that's right, Your Honor. So what grievance did your client claim was the basis for the retaliation claim for the incident of August 23rd? Well, there are two, Your Honor. There is one that is submitted to docs, or submitted on August 16th and filed with docs on August 22nd, the day before the assault. And there is one submitted on August 22nd that, although filed with docs after the assault, Mr. Barnes testified- It's dated August 22nd, right? That's correct, Your Honor. Filed August 29th, the judge- How do we know? What, where in the testimony do we know in the evidence at trial that it was submitted on August 22nd? What piece of testimony can you cite to? The evidence, other than the date on the document, and that it was filed August 29th. I don't believe that there's testimony that it was filed on August 22nd, but I think it's reasonable to infer that if Mr. Barnes- So your only evidence that it was filed on August 22nd is the date on the document itself? The date your client dates it? Yes, Your Honor, and we're entitled to reasonable inferences from that date at this stage. But even if you put that grievance to the side, there's still the August- And what do we make of the August 29th date? That is the date that it is officially filed with docs. Okay, and how do we know that? Where's the evidence on that and what that means, officially filed? Well, the evidence is that it's stamped that date, and there's some testimony in the record from Mr. Barnes that that triggers an investigation by docs. From Mr. Barnes, the testimony? Yes, Mr. Barnes, I mean, he also testified that when the grievance is put in the mailbox at the prison, that automatically officers will know about it because it's picked up from the mailbox that day and read. But, Your Honor, respectfully, even if you put that grievance to the side, that leaves other grievances that Mr. Barnes filed, including- What other grievances? Well, he filed the August 16th grievance, and that's at pages 908 to 909 of the record. That was in evidence, and that complains about tampering with his mail. It singles out Getman for failing to supervise his subordinates. It says he doesn't understand the implications of the mail tampering. And it asks that Getman be reprimanded. And Officer Getman, it's undisputed that he knew about that grievance. In fact, he investigated the part of the grievance that named his subordinates, and he signed this August 22nd, the day before the August 23rd assault. And so that temporal proximity, coupled with awareness, that alone is enough to- Is that the only grievance you're relying on for the August 23rd incident? Well, if the court is disinclined to infer that the August 22nd date on the August 22nd grievance creates a reasonable inference, we would submit that it does. That that is enough, at least to create a jury issue on that. But even so, even if it's just one grievance, that would be enough under this court's holding in Espinoff. Well, here's the problem, though. The cases that are cited, there's one grievance filed in the absence. But there appears to be a pattern of filing multiple grievances here. So what is the temporal proximity when you have a plaintiff that files grievances by his own testimony, as I read, once a week? More than once a week? He files lots of grievances, but not every grievance names every officer. This was a grievance that named three officers. One of them was Getman. And not only did Getman sign something acknowledging the grievance the day before, say in that acknowledgement that Mr. Barnes had threatened him during their conversation while he was investigating it. There's also the testimony, sorry, Your Honor, did you have a question? There's also the testimony from Mr. Barnes, and this is at page 390 of the joint appendix, that as Getman is kicking him, he says, run your mouth now, you ain't on the block, run your mouth. So put that together with the grievance, with Getman's undisputed awareness of it, and the temporal proximity. He's signing it the day before. That's enough to create a jury issue on causation. What about the fact that the jury was asked to deliver it? Let me ask you this question. Do you agree that the level of force that is being alleged, both in the August 23rd incident and the September incident, which are the subject of the retaliation claims, were levels of force that were egregious? This was not a de minimis level of force. I think that the levels of force alleged as to some of the officers was egregious. And that even as to Getman in the one incident, if the jury were to believe every single word out of Mr. Barnes' mouth, that that would be egregious. But we don't know what the jury thought. We weren't in the jury room. The jury had an undifferentiated no verdict on the Eighth Amendment claim. And there is daylight between the amount of force required. There is when the facts are where there might be a question on the first element of excessive force. But is there any question here that the level of force used to claim these excessive incidents was a level of force that a jury would inevitably have to reach the second part of the test? I think there is a question- Which is the malice and the- Yes, Your Honor. There is a question because there's conflicting testimony, diametrically opposed testimony about what Getman did during this incident. Mr. Barnes says he kicked him while he was down, he put a bag over his head. Getman says he didn't touch him. And so, the jury hearing an entire description of this might have said, well, the bag over the head, that doesn't sound realistic. Maybe he did give him a stick while he was down. But there's no question his leg was fractured as a result of the incident. Yes, but there was also- And there's no question that his finger was cut off as a result of the September. So wouldn't the jury inevitably have to reach the second part of the test of excessive force? And in doing so, thereby not be inability to have a retaliation claim. No, Your Honor, we- If the level of force used was not excessive. No, well, you have to go defendant by defendant, Your Honor. And Officer Getman was not the officer alleged to have broken Mr. Barnes' leg. Other officers, Arquette and another officer, were the ones who tackled him. A different officer was the one who was beating him with a baton on the legs and foot while he was on the ground. Getman wasn't alleged to have done any of that. So does Mr. Barnes- But if the level of force used, because we don't know who fractured his leg, right? It could have been Officer Getman if the jury could have believed that Officer Getman, in fact, kicked him to a level that broke his leg. I mean, I don't think in that incident you can parse whose conduct led to the injury necessarily. Your client doesn't say it was the blow by Officer X that led to my leg being broken. He doesn't say that, but I think if you read the testimony about the whole incident, Getman's kicking- But wouldn't the level of force being justified suggest that there would be no retaliation claim? Because it's not being done for purposes of malice or to get back at somebody, but rather necessary force. If the only issue was whether there was a subjective amount of force, then yes, I would agree with you. But I think that objectivity, whether this was a cruel and unusual amount of force by Getman alone, or in the other instance by Ramsdell and Clark, who were holding the retention straps. The claim against them is not just that the finger was severed, which was done by a different officer, Dunning, who was the one who slammed the hatch cover. But there, Mr. Barnes testified that it was just Ramsdell and Clark who were pulling him by his wrist restraints. And he was saying, stop that, my leg hurts. This was two weeks after he had the broken leg. That could be a level of force, right? We've seen cases like Sigler from the Fifth Circuit where twisting an ear is not enough. There are levels of force that don't rise to cruel and unusual punishment under the Eighth Amendment. And so it's possible. And just one more point on Getman as to that. It's not just the kicking. He also threatens Mr. Barnes, right? He makes the run-your-mouth statement as other people are assaulting him. And there is case law, including Santiago versus Blair from the Eighth Circuit, that says that a threat can be enough to chill speech in this context. So all of that is evidence of force that doesn't rise to constitutional dimensions as an objective Eighth Amendment matter. And for that reason, that question should not have been taken away from the jury. I see my red light is on, so unless. Unless there are questions, you reserve time for rebuttal. Thank you. Attorney, is it Hitsuse? Hitsuse, Your Honor. Thank you. You may proceed. Good afternoon, Your Honors. Jesse Barnes, at all phases of this trial, had a fair opportunity to present his side of the story. And that includes when he testified about retaliation ahead of the court's decision to dismiss these claims as a matter of law. The problem is that Mr. Barnes really doesn't provide a whole lot of testimony about his retaliation claims. He testifies about the incidents, the August 23rd incident and the September 9th incident that are at issue here, but he doesn't provide context through the lens of his First Amendment protected activity. What we have are free-floating grievances in the record and allegations based on temporal proximity. But this court has found in the past that temporal proximity, standing alone without any corroboration, is not going to be sufficient. You have the comment, run your mouth now, run your mouth now, you're not on the block. So that comment is attributed on appeal to Defendant Getman. The issue is that in the motion to dismiss Getman from the retaliation claims, Barnes, through his counsel, expressly denies that it's Getman who makes that statement. You can find that on pages 462 to 463 of the record. Now, in the reply brief, Barnes is saying that he was actually referring to somebody else, but context matters here, Your Honor. This is- Well, but that's at the motion to dismiss stage. Are you saying he didn't testify to that in trial? Your Honor, this is the Rule 50 motion at the trial. So the dismissal of the retaliation claims is squarely before the parties, and the Court asks Barnes, what is your evidence of retaliation against Defendant Getman? Specifically Getman, to which Barnes replies, Getman is not the one who made the run your mouth comment. It was Tulip, another defendant, but Getman is in the room when Tulip makes that comment, and that's our evidence of retaliation against him. So this is a classic case of invited error. What Barnes is trying to do is fault the Court for believing him. That statement cannot now on appeal be attributed to Getman, and while they say that the record is clear that Getman says this, I believe the cites are pages 389 through 390 of the record. It's ambiguous. It could be referring to Getman. I'm not going to deny that, but there is no unequivocal testimony. As Getman was kicking me, he says X, Y, Z. The evidence with respect to Ramsdell and Clark is even more scant because there's no testimony of grievances at all. There is no testimony about comments to that effect. What we have is an allegation, as Your Honor pointed out, testimony from Barnes that he's filing grievances all the time. I file grievances all the time, and I'm always experiencing retaliation for it. Now, that is exactly what this Court has cautioned against repeatedly, the ease with which incarcerated individuals can fabricate retaliation claims. If you're always filing grievances, you could essentially wrap yourself in a protective bubble where any time something happens that you don't like, you can go to court, claim that it happened contemporaneously with a grievance that you just filed, and basically be guaranteed a jury trial. Is your position that the trial testimony, that Mr. Barnes' testimony, it cannot be inferred that it was Getman who said, run your mouth now, you're not on the block, run your mouth now? That testimony standing on its own, I would admit, could produce that inference, yes. But the problem is that Barnes, through his counsel, he's bound by what his counsel says. He disavows that statement as being from Getman. But what if counsel got the evidence wrong? Attorneys do that, right? Even in their closing arguments, sometimes they cite to the evidence the jury heard that the jury didn't actually hear from witness Y versus witness X. I guess we're bound by what the evidence was before the jury, not what counsel's summation to the court about what the state of the evidence is. And obviously, a judge making a decision isn't going to rely on counsel's summary of the evidence, but his or her notes or recollection of what that evidence was. With all due respect, Your Honor, the two go hand in hand when placing it in context, because that evidence is ambiguous. So when the court's asking, what's your evidence? He's asking, the judge is asking, Barnes to characterize that evidence. And if Barnes is saying, Getman's not the one who said it, somebody else did, the court has every right to accept that characterization. I read that testimony, and I understood the judge to be concerned that the August 23rd, 22nd grievance was not filed until the 29th. And then asked counsel, what other evidence do you have of retaliation? Why I shouldn't take this count out as to Getman, but not about what Getman said, per se. So all the same, Your Honor, when the court's asking, what is your evidence, be it your primary evidence, your other evidence, if there is evidence that Getman is kicking him and making threats that could relate back to the grievance, we would admit that would be a smoking gun. You would expect counsel to be right out the gate saying, look what Getman said. Instead, counsel does the exact opposite and says, this is not what Getman said. This is what someone else said. And posits an entirely different theory that a retaliatory motive can be attributed to him by implication. Now, all the same, Your Honor, I don't want to belabor this point because we have an alternative reason for why these retaliation claims were properly dismissed. Even if Getman or any of the other defendants, the other two, I'll note just briefly that Ramsdell, there's no grievance in even mentioning him. But even if any of them should have been in the case on retaliation, all three remained in the case with respect to excessive force. The jury returns a verdict in all three of the defendants' favor on excessive force. And we do argue that the only element that really could have been at issue there is the subjective element. I disagree with my adversary that this is something where you can parse between the defendants, that some of them might have injured him severely, some of him might not have. You have to look at the testimony as a whole. If we're looking at Barnes' testimony, both of these incidents are very severe and very brutal assaults. Imagine for a second if this were a criminal case. If Getman had gone in and just kicked him once or twice, he's still part of the assault. He'd be guilty. Maybe he doesn't get as large of a sentence, but he'd be guilty. Same with Clark and Ramsdell. Barnes is alleging that he's holding his hand up against the protective hatch while a third person slams it down. That is not de minimis by any stretch of the imagination. And so what we have here are two diametrically opposed versions of events that don't allow for a middle ground. Now, I respect the notion that a jury is allowed to make partial credibility findings. Juries do that all the time. But partial credibility findings still have to have some sort of evidentiary support. We have Barnes alleging that these three defendants were accomplices in brutal assaults. We have Getman saying, I wasn't even there. We have Clark and Ramsdell saying, we were acting to extricate ourselves because Barnes grabbed us and grabbed a handcuff key. There is no version of events that the jury could credit under which the excessive force claims fail for want of an objectively severe injury. The verdict necessarily has to be that these defendants either acted in good faith or these defendants weren't involved at all. Either way, retaliation could not be a but-for cause of the injuries that Barnes alleged. And what that means is that a verdict for any of these defendants on retaliation would be legally inconsistent with the favorable verdict for them on excessive force, which is why these claims were properly dismissed. Now, I know that there were other issues in this case. I'm aware that my opposing counsel didn't get to talk about them. If this court has any questions, I'm happy to address those as well. Seeing none, thank you counsel. Thank you. You have two minutes for rebuttal, Attorney Eisenberg. Thank you, your honors. Three quick points. The first on the Getman statement, as you noted, Judge Kahn, the testimony is clear. He says, Mr. Barnes testifies, Getman kicked me, and then the next words out of his mouth in the transcript are, run your mouth now. It is clear that he is attributing that to Getman. And to be sure, trial counsel said that Tulip said run your mouth, but that is because there's also testimony that Tulip said, I heard you like to run your mouth. That's at page 384 of the joint appendix. So that statement, outside the presence of the jury, not part of the record evidence that makes up the consideration of whether there is at least a jury question, shouldn't change the calculus as to Getman. Second, on the preclusion issue. I mean, yes, there is testimony that conflicts, but that is why we have juries. And I would posit that the delta between the story that Clark and Ramsdell told and the story that Mr. Barnes told isn't as far as my friend makes it seem, right? Clark and Ramsdell don't deny that they were pulling on Mr. Barnes's restraints. They say they were justified in doing it, they might have been pulling hard. Mr. Barnes's testimony was enough to cause him light discomfort. I mean, there is a view of that evidence that they were doing that in a way that would have deterred him from filing grievances, but not in a way that would rise to cruel and unusual punishment. I mean, the same is true of Getman. He said he was there, but he didn't lay a hand on Mr. Barnes. The jury could have believed he was there. He yelled at Mr. Barnes, he threatened him. He gave him a kick, but not a kick hard enough to constitute cruel and unusual punishment. And finally, Your Honor, on this point about filing many grievances, it certainly can't be the case that a prisoner who files many grievances somehow forfeits his right to First Amendment retaliation claims because there could always be the charge that he files lots of grievances and so there are just too many out there. When there is a case like this one where you have grievances very close in time, naming the specific officers, those officers are aware of those grievances and then take adverse action. That is enough to create a jury question on the issue of retaliation. Thank you, Attorney. Thank you, Your Honor. Thank you, counsel. I